John T. Casey, J.
The petitioners, doing business as a joint venture known as Maxwell’s Plum, a restaurant in New York City, have instituted an article 78 proceeding, in the nature of mandamus, in which they seek to review and vacate the orders of one of the respondents, the Public .Service Commission of the State of New York, (herein PSC). Specifically, the petitioners request: (1) an order vacating and annulling-orders of the commissioners in which they directed the Consolidated Edison Company of New York, Inc. (herein Con. Ed.), to terminate the supply of natural gas to Maxwell’s Plum unless the petitioners discontinue the use of unmantled gas lamps inside the restaurant; or, alternatively, (2) an order remanding the matter to the commission for a hearing and reconsideration and (3) staying the enforcement of the orders of the PSC, pendente lite.
Maxwell’s Plum Restaurant is, in the words of one columnist, “ one of the restaurant phenomena of the decade ”. (Audrey Shaving, “Dining Out”, The Sunday News, March 21, 1971, p. 94,. col. 4.) It is an overwhelming economic success. The fixtures and furnishings of Maxwell’s Plum, which were, according to the petitioners, gathered and chosen with meticulous care and at .considerable expense, consist of hanging Tiffany lamps, special mosaic and colored glass panels built into the wall ¡and electrically illuminated from .behind, mirrors with figures etched upon them, ceramic animals and animal heads, carved mahogany walls and bar, a beaten copper ceiling, fresh- *748 cut flowers, and 31 dual-burner natural gas lamps individually hand-cast of brass. The natural gas lamps, petitioners claim, are one of the most important interior design elements of the restaurant. The lamps produce a flickering yellow and blue flame approximately five inches high; its fluctuation and movement combine to produce a .soft flattering light creating a sense of activity and liveliness. In sum, the petitioners contend that the ambience o.f Maxwell’s Plum is traceable to a substantial degree to those gas lamps and any change in the manner or character of their illumination could destroy that ambience with potentially disastrous economic repercussions.
By order issued January 30, 1973 the PSC banned the use of decorative torches and defined such torches as: decorative torches shall mean any ornamental device in which gas is used as a fuel to produce an open flame, whether or not such flame is open to the atmosphere or enclosed in glass (or other appropriate covering). It shall not mean ‘ ‘ gas lights ’ ’ wherein a mantle is employed that enables the gas to be converted to useful lighting.
On July 19, 1973 the PSC directed Con. Ed. to discontinue natural gas service to Maxwell’s Plum by August 3, 1973 unless the natural gas lamps were extinguished or converted to be used with mantles.[1] On August 22, 1973 the PSC granted the petitioners an extension until September 30, 1973 to extinguish or mantle those lamps. Subsequently, the date for compliance was extended to January 4, 1974 and at the oral argument on December 28, 1973 this court granted a stay of the enforcement of those orders pending this decision.
The petitioners claim the actions of the PS,C should be set aside for several reasons. First, they argue that jurisdiction of that commission does not extend to monitoring the use of devices in a restaurant such as Maxwell’s Plum. Secondly, the delegation of power to the PSC was vague, and, therefore, unconstitutional. Third, they argue that if the PSC has such authority, it failed to make a requisite finding, i.e., that Con. Ed. is unable to meet the reasonable need's of its customers and of persons or corporations applying for new or additional gas Service. Fourth, that the prohibition against " decorative torches ” does not include the subject gas lamps which are used primarily for illumination and their decorative or ornamental *749 use is ancillary. Fifth, the order of the PSC will not necessarily result in a gas saving. Sixth, the PSC arbitrarily refused to accept an offer of the petitioners whereby they would convert several items of equipment to electricity and thereby save an amount of gas in excess of that used by the gas lamps, if they were permitted to continue the use of the lamps. Finally, the PSC failed to allow the petitioners a hearing as mandated by subdivision 5 of section 66 of the Public Service Law or under the Due Process Clause of the State and Federal Constitutions.
Section 66 of the Public Service Law itemizes the general powers of the PSC in respect to gas and electricity. In subdivision 2 the Legislature granted numerous powers to the PSC. It provides in pertinent part:
The commission shall: “2. Investigate and ascertain, from time to time, the quality of gas supplied by persons, corporations and municipalities; examine or investigate the methods employed by such persons, corporations and municipalities in manufacturing, distributing and supplying gas or electricity for light, heat or power and in transmitting same * * * and may order the curtailment or discontinuance of the use of natural gas for manufacturing or industrial purposes, for periods aggregating not to exceed four months in any calendar year, if it is established to the satisfaction of the commission that the supply of natural gas is not adequate to meet the reasonable demands of domestic consumption cmd may prohibit the use of natural gas in wasteful devices and practices.” (Emphasis added.)
The petitioners argue that the authority to prohibit the., use of wasteful devices and practices is limited to prohibiting such devices or practices by only industrial and manufacturing customers. The petitioners point to the absence of a semicolon between ‘ ‘ consumption ’ ’ and ‘1 and ’ ’ in the statute as evidence of a legislative intent to monitor the use of wasteful devices and practices :of industrial and commercial users. They further argue that the PSC interprets subdivision 2 of section 66 as requiring a finding of a gas shortage before it may ban the use of gas in wasteful devices or practices. Thus, the petitioners continue, the PSC reads the prohibition against wasteful devices as part of the general power concerning industrial and manufacturing customers. Along these same lines, the petitioners argue that under various rules of statutory construction the court should adopt a construction limiting the *750 power of the PSC and thereby shielding domestic and private consumers from its tentacles.
As I read .subdivision 2 of section 66 there is little doubt but that the power to prohibit wasteful devices and practices with respect to the consumption of natural gas extends beyond such uses by industrial and manufacturing concerns. The absence of a semicolon and the construction of the section by the PSC is not determinative. (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, §§ 253, 129.) Inasmuch as the remaining arguments of the petitioners hinge on whether the section is, in this instance, equivocal, they are untenable.
The (petitioners contend, however, that the statutory language is an indistinct standard against which to ascertain the intent of the Legislature and to review the determination of the PSC, and is, therefore, an illegal delegation of legislative authority. The pivotal word is “wasteful”. Its meaning is neither vague nor indefinite. Moreover, it would be inconceivable to require the Legislature to enumerate the “ myriad situations to which it wishes * * * [its policy against wasteful practices and devices] * # * applied and to formulate specific rules for each 'situation.” (Matter of City of Utica v. Water Pollution Control Bd., 5 N Y 2d 164, 169.) The legislative delegation of power is a constitutionally sufficient standard .for the guidance of the PSC and for the review of its determinations, in light of the complexities of the area regulated. (Chiropractic Assn. of N. Y. v. Hilleboe, 12 N Y 2d 109, 120; Matter of City of Utica v. Water Pollution Control Bd., supra.)
•The PSC has the power under subdivision .2 of section 66-a to direct a supplier gas corporation to discontinue supplying gas to customers using gas in a manner determined to be a wasteful device or practice under subdivision 2 of section 66. The statutory predicate for that directive, however, is a finding by the PSC that there exists such a shortage of[1] gas in an area of the State that the gas corporation supplying that area is unable to secure and produce sufficient gas to meet the reasonable needs of its customers and of persons or corporations applying for new or additional gas .service. (Public Service Law, § '66-a, subd. 2.)
Despite the arguments of the petitioners, that precise finding with regard to Con. Bd. .and several other gas corporations, was made by the PSC after a hearing, in an opinion and order issued on October 21,1971. At that time, the PSC promulgated several restrictive procedures but did include a ban on decorative torches. The October 21, 1971 opinion and order were amended *751 several times, but the predicate determination concerning Con. Ed. was never changed. Thus, the ban. on the use of such torches and the directive to Con. Ed. to discontinue supplying gas to Maxwell’s Plum unless it discontinues the use .of such torches must stand, unless the PSC acted arbitrarily in determining* that those torches constituted a wasteful device or practice or acted arbitrarily in including within the definition of “ decorative torches ” the gas lamps in Maxwell’s Plum. With regard to whether the ‘ ‘ decorative torch ’ ’ was a wasteful device or practice, there has been no showing to overcome the determination by the PSC that an .unmantied gas lamp .produces less illumination than a mantled gas lamp. Furthermore, it cannot be said that the PSC acted arbitrarily in including the gas lamps in Maxwell’s Plum within its definition of ‘ ‘ decorative torches ”.
Finally, the petitioners argue they should be afforded a hearing prior to the implementation of an order concerning the gas lamps. The papers presented, however, reveal that during this entire matter they were represented by capable and diligent counsel who fully presented their position to the PSC. Based upon this record, I fail to .see where the petitioners have been deprived of a constitutional right.
Furthermore, the hearing requirements under subdivision 5 of section >66 of 'the Public ¡Service Law do not apply to private consumers of gas such as Maxwell’s Plum. I have considered the other arguments of the petitioners and find them to be without merit.
The petitioners have advised the court that they intend to appeal the decision herein. Accordingly, the PSC shall be stayed from enforcing its determination for a period of 30 days from the date of service of the judgment herein, with notice of entry, upon the petitioners.
Petition dismissed.

. A mantle is a hollow bag-shaped or spherical device, usually made of fire proof cloth, that fits as a cap over the orifice of a gas lamp. The gas passes through the cloth and bums on the surface of the mantle, which becomes incandescent.